UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALBERT D. SEENO CONSTRUCTION COMPANY, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>ASPEN INSURANCE UK LIMITED,<br><br>Defendant. | Case No. 17-cv-03765-SI<br><br>**ORDER GRANTING MOTIONS TO STRIKE**<br><br>Re: Dkt. Nos. 172, 175 |

On October 9, 2020, the Court held a hearing on the parties' cross motions to strike expert witnesses. For the reasons set forth below, the Court GRANTS defendant's motion to strike plaintiff's expert witness, and GRANTS plaintiff's motion to strike defendant's expert witness.

**BACKGROUND**

On August 28, 2020, defendant Aspen Insurance UK Limited ("Aspen") filed a motion to strike plaintiff Albert D. Seeno Construction Co., Inc.'s ("ADSCO") expert Charles Miller. Dkt. No. 172 (Aspen's Motion to Strike). Aspen seeks exclusion under Federal Rule of Civil Procedure 37(c)(1) because ADSCO failed to properly disclose Mr. Miller's expert testimony until almost three months after the expert disclosure deadline. *Id.* at 10.

After multiple prior continuances, this Court set the expert disclosure deadline for April 27, 2020. Dkt. No. 113. The Court ordered that the "[p]arties *SHALL* conform to Rule 26(a)(2)." *Id.* (emphasis in original). Aspen served its designation on April 27, 2020 "by U.S. Mail, with a courtesy copy served via email." Dkt. No. 172 at 8. ADSCO served its expert disclosure dated April 27, 2020 via U.S. Mail. *Id.* at 8-9; Dkt. No. 172-3 at 2 (ADSCO's "Preliminary" Expert Disclosure). Aspen had not received ADSCO's expert disclosure by the next day, so Aspen's

1  counsel requested a copy of the disclosure via email. Dkt. No. 172 at 9. ADSCO provided the
2  disclosure via email that same day. *Id.* However, ADSCO's disclosure failed to identify the
3  documents Mr. Miller would be relying upon, failed to include a list of his prior cases, and only
4  contained an outline of Mr. Miller's anticipated testimony. *Id.*; *see also* Dkt. No. 172-3 at 4. While
5  ADSCO "specially employed" Mr. Miller to provide expert testimony, the report also did not
6  contain Mr. Miller's signature. *Id.* at 1.

7  ADSCO's disclosure stated that the report was incomplete because ADSCO had been unable
8  to depose Silvana Milton, a claim handler for Aspen. Dkt. No. 172-3 at 1. On June 18, 2020 and
9  after the expert disclosure deadline, ADSCO deposed Silvana Milton. Dkt. No. 179 at 12 (ADSCO's
10 Opposition Brief). Approximately a month later, on July 17, 2020, ADSCO produced Mr. Miller's
11 full report—this time identifying the documents Mr. Miller would be relying upon and a list of his
12 prior cases. *Id.*

13 On September 2, 2020, ADSCO filed its own motion to strike Aspen's expert Earl Imhoff.
14 Dkt. No. 175 (ADSCO's Motion to Strike). ADSCO seeks to exclude Mr. Imhoff's testimony on
15 the grounds that (1) Mr. Imhoff will testify on the ultimate issue of "whether Aspen acted reasonably
16 and in good faith with respect to" ADSCO, and (2) Mr. Imhoff based his expert opinion on
17 privileged mediation materials. *Id.* at 6. Mr. Imhoff's expert disclosure lists "ADSCO's Mediation
18 Brief" and "Aspen's Mediation Brief" as materials he reviewed. Dkt. No. 175-2 at 34.

19
20                                      **LEGAL STANDARDS**
21 **I.    Federal Rules of Civil Procedure 26 and 37**

22 Federal Rule of Civil Procedure 26(a)(2) requires a party to disclose the identities of its
23 expert witnesses who are to testify at trial pursuant to the time and sequence ordered by the court.
24 Fed. R. Civ. P. 26(a)(2). "[I]f the witness is . . . specially employed to provide expert testimony,"
25 the expert disclosure "must be accompanied by a written report—prepared and signed by the
26 witness." Fed. R. Civ. P. 26(a)(2)(B). "The report must contain:
27    (i) a complete statement of all opinions the witness will express and the basis and
       reasons for them;
28

2

    (ii) the facts or data considered by the witness in forming them;

    (iii) any exhibits that will be used to summarize or support them;

    (iv) the witness's qualifications, including a list of all publications authored in the previous 10 years;

    (v) a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition; and

    (vi) a statement of the compensation to be paid for the study and testimony in the case."

*Id.* Disclosures are meant to allow the opposing party a reasonable opportunity to prepare for effective cross examination of the witness and to arrange for expert testimony from other witnesses. *See* Advisory Committee Notes to 1993 Amendments.

"If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). Rule 37(c)(1) "gives teeth to [the Rule 26 disclosure requirements] by forbidding the use at trial of any information required to be disclosed by Rule 26(a) that is not properly disclosed." *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001). The sanction is "self executing . . . and automatic to provide a strong inducement for disclosure of material." *Id.* at 1106. The burden falls on the party facing the sanction to demonstrate that the failure to timely disclose their experts was "substantially justified" or "harmless" and that their witness should not be excluded under Rule 37(c)(1). *Id.* at 1107.

**II.     California's mediation privilege**

Under California law, except as expressly provided, "[a]ll communications, negotiations, or settlement discussions by and between participants in the course of a mediation . . . shall remain confidential." Cal. Evid. Code § 1119(c). Additionally, "[n]o writing . . . that is prepared for the purpose of . . . a mediation . . . is admissible or subject to discovery." Cal. Evid. Code § 1119(b). "Except in rare circumstances, [the California mediation privilege] must be strictly applied and do[es] not permit judicially crafted exceptions or limitations, even where competing public policies may be affected." *Cassel v. Superior Court*, 51 Cal. 4th 113, 117-18 (2011). "[T]he purpose of

3

1   these provisions is to encourage the mediation of disputes by eliminating a concern that things said
2   or written in connection with such a proceeding will later be used against a participant. Toward that
3   end, 'the statutory scheme . . . unqualifiedly bars disclosure of communications made during
4   mediation absent an express statutory exception.'" *Id.* at 124.

5   Under Federal Rule of Evidence 501, privileges provided by state law apply in civil actions
6   only "with respect to an element of a claim or defense as to which State law supplies the rule of
7   decision." Fed. R. Evid. 501. Therefore, the California mediation privilege applies in diversity
8   actions where state law is controlling. *See Silicon Storage Tech. v. Nat'l Union Fire Ins. Co.*, No.
9   5:13-cv-05658-LHK, 2015 WL 4347711, 2015 U.S. Dist. LEXIS 92775, at *4 (N.D. Cal. July 15,
10  2015).

## DISCUSSION

### I. Aspen's motion to strike expert Charles Miller

ADSCO concedes that its initial disclosure of Mr. Miller did not comply with Rule 26(a)(2). The disclosure failed to include a list of Mr. Miller's prior cases or the information he relied upon (which, even if Ms. Milton had not yet been deposed, would have been known), nor did it contain a written report signed by Mr. Miller. *See* Dkt. No. 172-3. As such, exclusion of Mr. Miller is appropriate unless ADSCO can prove that their "failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1).

#### A. ADSCO was not substantially justified in failing to disclose Mr. Miller's expert testimony

ADSCO argues that "[c]onduct is substantially justified where there is a 'genuine dispute' or 'if reasonable people could differ as to [the appropriateness of the contested action].'" Dkt. No. 179 at 13 (citing *Pierce v. Underwood*, 487 U.S. 552, 565 (1988)). They assert that there is a "genuine dispute between the parties on whether Charles Miller should have prepared a partial report without the deposition testimony of Silvana Milton, and then supplemented it later." *Id.* Aspen, on the other hand, argues that ADSCO's conduct was not justified. Dkt. No. 172 at 12. The Court agrees with Aspen.

4

In *Churchill*, the court noted that "Rule 26 *anticipates* that an expert's written report may need to be updated to reflect newly discovered evidence after it has been disclosed." *Churchill v. United States*, No. 1:09-cv-01846 LJO JLT, 2011 WL 444849, 2011 U.S. Dist. LEXIS 13761, at *10 (E.D. Cal. Feb. 8, 2011) (emphasis in original). In fact, the Rule "*requires* the parties to supplement" their expert reports. *Id.* Similarly, Rule 26 mandates that parties disclose their expert witnesses to the other party pursuant to the time and sequence ordered by the court. Fed. R. Civ. P. 26(a)(2). This Court ordered that the parties "*SHALL* conform to Rule 26(a)(2)." Dkt. No. 113. There can be no "genuine dispute" as to whether a party can sidestep a disclosure deadline when the Rules, court orders, and case law all reflect that the party is mandated to comply with that deadline.

Further, if there was a "genuine dispute" over whether ADSCO must comply with the disclosure deadline, "[w]hy did counsel not seek modification of the scheduling order to allow a later disclosure or request an extension of time from the Court?" *Churchill*, 2011 U.S. Dist. LEXIS 13761, at *11. ADSCO complains that the parties "spent months meeting and conferring on when Silvana Milton would be able to complete her deposition." Dkt. No. 179 at 9. During the approximately six months between the first deposition of Ms. Milton and the expert disclosure deadline, the parties communicated many times regarding Ms. Milton's deposition. *Id.* at 11. However, at no point in those six months did ADSCO request that the Court extend or modify the expert disclosure deadlines. "The need to do so was readily apparent to [ADSCO's] counsel prior to the expiration of the disclosure deadline." *See Churchill*, 2011 U.S. Dist. LEXIS 13761, at *12. ADSCO, "therefore, proceeded at his own peril in failing to request an extension of time from the Court." *Id.* at *13. Under these circumstances, ADSCO's failure to timely disclose its expert witness was not substantially justified.

### B. ADSCO's failure to disclose was not harmless

ADSCO asserts that Aspen has not been harmed because "Aspen now has [Mr. Miller's] report." Dkt. No. 179 at 14. However, Aspen was not provided with that report until almost three months *after* the deadline passed, depriving Aspen of time it could have used to prepare accordingly and providing ADSCO with a litigation advantage. Further, "[d]isruption to the schedule of the

5

1  court and other parties in that manner is not harmless. Courts set such schedules to permit the court
2  and the parties to deal with cases in a thorough and orderly manner, and they must be allowed to
3  enforce them, unless there are good reasons not to." *Wong v. Regents of the Univ. of Cal.*, 410 F.3d
4  1052, 1062 (9th Cir. 2005).

5  Accordingly, the Court GRANTS Aspen's motion to strike Mr. Miller.[1]

## II. ADSCO's motion to strike expert Earl Imhoff

ADSCO seeks to exclude Mr. Imhoff's testimony on the grounds that (1) Mr. Imhoff based his expert opinion on privileged mediation materials, and (2) Mr. Imhoff will testify on the ultimate issue of "whether Aspen acted reasonably and in good faith with respect to" ADSCO. Dkt. No. 175 at 6.

This case is a diversity action governed by California state law, and thus the California mediation privilege applies in this case. Fed. R. Evid. 501; *see also Silicon Storage*, 2015 U.S. Dist. LEXIS 92775, at *4. Under California law, "[a]ll communications, negotiations, or settlement discussions by and between participants in the course of a mediation . . . shall remain confidential," and "[n]o writing . . . that is prepared for the purpose of . . . a mediation . . . is admissible or subject to discovery." Cal. Evid. Code § 1119. Aspen does not assert that the parties' mediation briefs are not subject to the mediation privilege. Rather, Aspen contends that this privilege does not apply in this case because (1) Aspen provided its own expert with Aspen's own mediation brief, and (2) ADSCO has not pointed to anything prejudicial in the privileged materials, so exclusion is not warranted. Dkt. No. 183 at 6.

First, if Aspen had only provided its expert with its own mediation brief, Aspen's actions

---

[1] Where a sanction amounts to a dismissal of a claim, district courts are "required to consider whether the claimed noncompliance involved willfulness, fault, or bad faith." *R & R Sails, Inc. v. Ins. Co. of the Pa.*, 673 F.3d 1240, 1247 (9th Cir. 2012) (citing *Henry v. Gill Indus., Inc.*, 983 F.2d 943, 946 (9th Cir. 1993)). The Ninth Circuit has stated "that disobedient conduct not shown to be outside the control of the litigant is all that is required to demonstrate willfulness, bad faith, or fault." *Henry*, 983 F.2d at 948 (internal quotations omitted).

Here, ADSCO does not contend that the exclusion of Mr. Miller would amount to the dismissal of a claim. However, in an abundance of caution, to the extent that the exclusion of Mr. Miller constitutes a dismissal of a claim, the Court finds that ADSCO's failure to adhere to the disclosure requirements was willful.

may have been permissible as a waiver of the mediation privilege. *See* Cal. Evid. Code § 1122 ("[A] writing . . . is not made inadmissible . . . [if the] writing was prepared by or on behalf of fewer than all the mediation participants, those participants expressly agree in writing, or orally . . ., to its disclosure."). However, because Aspen supplied its expert with ADSCO's mediation brief, *see* Dkt. No. 175-2 at 34, Aspen could not unilaterally waive the privilege as to ADSCO's mediation brief. Therefore, this Court need not decide whether Aspen waived the privilege of its own brief because Aspen violated the mediation privilege as to ADSCO's mediation brief.

Second, "[e]xcept in rare circumstances, [the California mediation privilege] must be strictly applied and do[es] not permit judicially crafted exceptions or limitations, even where competing public policies may be affected." *Cassel*, 51 Cal. 4th at 118. The mediation privilege does not contain a "prejudice" requirement. On the contrary, the privilege "unqualifiedly bars disclosure of communications made during mediation absent an express statutory exception." *Id.* at 124. In *Cassel*, the California Supreme Court held that mediation-related attorney-client communications, including communications that occurred prior to the mediation and made outside the presence or hearing of the mediator, were governed by the California mediation privilege, and therefore were neither discoverable nor admissible for purposes of proving a claim of legal malpractice brought by the client. *Id.* at 138. In *Rojas*, the California Supreme Court explained that witness statements prepared for the purpose of mediation are privileged even if the facts set forth in those statements are otherwise admissible through other means. *Rojas*, 33 Cal. 4th at 423 n.8. Thus, these cases stand for the proposition that California's mediation privilege provides "broad protection for the confidentiality of communications exchanged in relation to [the mediation] process, even where this protection may sometimes result in the unavailability of valuable civil evidence." *Cassel*, 51 Cal. 4th at 136.

Neither party cited any cases that are directly on point. However, ADSCO cited two cases that are instructive. In *Fox v. Kramer*, the California Supreme Court held that an expert's testimony and report were properly excluded because that expert had relied upon peer review materials that were immune from discovery under California Evidence Code section 1157. *Fox v. Kramer*, 22 Cal. 4th 531, 540-41 (2000). The Court noted that the expert's reliance on the material was

"substantial" and, while he reviewed other materials, "he was unable to offer opinion testimony without reference to or reliance on the hospital peer review committee records." *Id.* at 537.

In *Irwin Seating v. IBM*, the court excluded expert witnesses pursuant to Federal Rule of Evidence 408 because the experts reviewed confidential mediation statements in the course of preparing their reports. *Irwin Seating Co. v. IBM*, No. 1:04-CV-568, 2006 U.S. Dist. LEXIS 86988, at *11 (W.D. Mich. Nov. 29, 2006). In striking the experts, the court noted:

> Moreover, and perhaps more significantly, there is no adequate way to assess the impact the mediation briefs had on the experts, and how the experts may have shaped their evaluations consciously or unconsciously in response to the claims made and positions taken by defendants in their mediation briefs. Even in denying any recall of what defendants' positions were in their reports, both experts concede these briefs were among the first documents they read, 'in order to gain some sense of what the case was about.' The bell has been rung. There are simply some things that cannot be forgotten once they are learned.

*Id.* at *10.

Here, similar to the experts in *Irwin Seating*, Mr. Imhoff declares that he "did not rely on the content of either brief in formulating or finalizing my opinions in this case" and that "[i]n formulating my opinions in this case, I did not rely on anything mentioned solely in either mediation brief." Imhoff Decl. ¶¶ 3, 5 (Dkt. No. 183-1). Mr. Imhoff also states that he asked to review the mediation briefs in order "to determine with certainty what specific conduct by Aspen [ADSCO] allege[s] constitutes bad faith," and that ADSCO's mediation brief did not clarify that issue for him. *Id.* ¶ 3. However, it is undisputed that Mr. Imhoff was provided with the mediation briefs upon request,[2] and that Mr. Imhoff reviewed those briefs with the aim of better understanding ADSCO's claim for bad faith. "[T]here is no adequate way to assess the impact the mediation briefs had on" Mr. Imhoff's final report or how he may have shaped his "evaluations consciously or unconsciously in response" to the statements contained in these briefs. *Irwin Seating*, 2006 U.S. Dist. LEXIS 86988, at *11.

Because the California mediation privilege "unqualifiedly bars disclosure of communications made during mediation absent an express statutory exception," *Cassel*, 51 Cal. 4th

---

[2] Mr. Imhoff states that he prepared an initial draft of his report and then requested to see the mediation briefs, after which he finalized his report. *Id.*

8

at 117-18, and "there is no adequate way to assess the impact the mediation briefs had on" Mr. Imhoff, *Irwin Seating*, 2006 U.S. Dist. LEXIS 86988, at *10, the Court finds that exclusion is appropriate in this case. "Striking an expert witness is a harsh remedy, but not an unfair one, where a party has placed its experts at risk by infusing them with knowledge to which they were not entitled." *Id.* at *11. Accordingly, ADSCO's motion to strike Earl Imhoff is GRANTED.[3]

## CONCLUSION

For the reasons stated in this Order, the Court GRANTS Aspen's Motion to Strike Charles Miller and GRANTS ADSCO's Motion to Strike Earl Imhoff.

**IT IS SO ORDERED**.

Dated: October 16, 2020

SUSAN ILLSTON
United States District Judge

---

[3] The Court does not find any evidence of bad faith on the part of defense counsel. At the October 9 hearing, counsel indicated that they were unaware of California's mediation privilege when they provided the briefs to Mr. Imhoff. Nevertheless, the disclosure was not accidental, which distinguishes this case from the single case cited by Aspen. *See McLean v. Air Methods Corp.*, No. 1:12-CV-241-JGM, 2014 WL 280343 (D. Vt. Jan. 24, 2014).
Because the Court has stricken Mr. Imhoff, the Court finds ADSCO's other challenge to Mr. Imhoff is moot.